### CINCINNATI v. ROBERT HOSEA, TRUSTEE ET AL.

1. FAILURE TO ACCEPT LAND CONDEMNED FOR SIX MONTHS.

Where the money assessed as compensation for lands appropriated is deposited with the clerk more than six months after the date of the judgment, the property owners are not bound to accept it; the proceedings are rendered of no force and effect, except as to costs, by reason of such delay.

2. SUBSEQUENT ACCEPTANCE OF ASSESSMENT A WAIVER.

But an acceptance of the money after the expiration of six months from the date of the assessment, and delivery of possession, constitutes a waiver of a strict compliance with the statute and operates as a ratification of the proceedings.

3. PROPERTY OWNERS NOT ENTITLED TO INTEREST.

Property owners are not entitled to interest on a fund deposited for their use and benefit in a condemnation proceeding, by the appropriating corporation, in good faith, within a few days after the expiration of six months, and under the order of the court, nor after they have permitted the fund to remain idle for over two years before electing to receive it.

4. ORDER PERMITTING WITHDRAWAL OF MONEY FROM COURT.

An order, on the application of property owners, made after a condemnation proceeding has wholly ended, permitting the money deposited by the corporation within a few days after the expiration of six months (and which property owners were not bound to accept), to be withdrawn "without affecting any further rights which the said defendants may have in the premises and without prejudice to their right to recover any further sum which may be due them by reason of the appropriation of their property in this proceeding" does not include or create a right in the property owners to recover interest on money paid into court; and if the order had such force and effect, being collateral to the original proceeding, it would be erroneous. The order in question simply reserved any further rights which property owners might have in the premises, including their right to recover any further sum which might be due.

5. ADJUDICATION AS TO BOUNDARY LINES CONCLUSIVE.

The determination of boundary lines of property taken in condemnation proceedings is conclusive in a subsequent suit between the same parties and concerning the same subject matter.

6. ADMISSION OF ORAL TESTIMONY—ERRONEOUS.

In proving the former adjudication, if the record is definite and certain, the admission of oral testimony to explain and enlarge it is erroneous.

ERROR to the Court of Common Pleas of Hamilton county.

GIFFEN, J.

On November 28, 1892, the city of Cincinnati commenced an action in the common pleas court to condemn and appropriate to public use certain lands, including lots Nos. 52, 53, 57 and 60 in Hafer's subdivision. Compensation was on July 1, awarded therefor in the sum of $4,790. The owners, Robert Hosea, trustee, et. al, prosecuted error to the judgment of the court of common pleas, but the same was afterwards affirmed by the circuit court and its judgment was also affirmed by the Supreme Court.

In the meantime, to-wit, on January 14, 1894, the city deposited with the clerk of the common pleas court the money assessed in pursuance of an order of the court entered December 26, 1893. On June 22,

1896, the money so deposited was paid by the clerk to Robert Hosea, trustee, et al., on their application and by order of the court that it "shall be received and paid without affecting any further rights which the said defendants may have in the premises and without prejudice to their right to recover any further sum which may be due to them by reason of the appropriation of their property in this proceeding."

The defendants in error set forth the above facts in part in their original petition and averred that the city took possession of said lots on August 1, 1893, by digging a trench across the same, and prayed for judgment against the said city for said sum of $4,790, with interest from the 1st day of August, 1893, less the sum of $4,790, paid June 22, 1896. In an amendment to the petition they aver that their lots extended back westwardly to Eden Park.

The city admitted the award of July 1, 1893, the payment of the money, averred that it thereupon entered upon the possession of the aforesaid property, and denied the allegations of the petition and amendment not admitted.

The alleged errors are:

First. In receiving as evidence the judgment and record in the condemnation proceedings and oral testimony as to the question of the west boundary of said lots being tried in that proceeding.

Second. In allowing interest on the sum of $4,790, after the sum was deposited with the clerk, by order of the court for the use and benefit of the owners of the lots.

In support of the first claim it is contended that the land over which the trench was dug did not lie in Hafer's subdivision and was not described in the application to the court for its appropriation. The description is as follows:

"Certain property contiguous to and adjoining Eden Park in said city * * * to-wit: Lots 52, 53, 57 and 60 of the subdivision known as Hafer's Eastern Liberties, in the city of Cincinnati."

The plat attached to the application shows that the lots front on Columbia avenue and extend back toward the west line of Eden Park. The effect of the description therefore was to include the land lying between the avenue and Eden Park. In allowing compensation it was necessary to fix the western boundary of Hafer's subdivision, and the jury, in answer to a special interrogatory, returned that they allowed compensation for property to be taken to the line shown by Mr. Burke's survey, which included the part on which the trench was located. This finding was not carried into the judgment of the court, but "the court coming to the distribution of the said money so assessed as the valuation of the parcels of ground described in the application, orders and decrees, etc." While the record is not as clear on this point as might be, it, in effect, determines the boundary line and ought to be conclusive in a subsequent suit between the same parties and concerning the same subject-matter. So far the record was definite and certain, and the admission of oral testimony to explain and enlarge it was erroneous, but not perhaps prejudicial.

Second. The money assessed as compensation for the lots appropriated was deposited with the clerk more than six months after the date of the judgment, and hence the defendants in error were not bound to accept the same, the proceedings having been rendered of no force and effect, except as to costs, by reason of such delay. They did, however,

accept the money, and we think thereby waived a strict compliance by the city with the provision of the statute requiring payment or deposit within six months from the date of the judgment. In Ryan v. Cincinnati, 26 Ohio St., 109, at 120, after quoting sec. 2260, Rev. Stat., providing that payment of condemnation money shall be made within six months of the date of the judgment, the court say:

"The provisions of this section are evidently intended for the benefit of the land owner, preventing, as they do, the land from being hung up in uncertainty for an unreasonable length of time, and a strict compliance with its requirements could be waived by the owner. An acceptance of the money assessed as compensation after the expiration of six months from the date of the assessment, and the delivery of possession would constitute such a waiver, and operate as a ratification of the proceedings."

To the same effect is Dillon's Mun. Corp., sec. 593.

A distinction is sought to be made in the case before us from the one cited, for the reason that the city already had possession of the land, and hence there could be no delivery of possession at the time of receiving the money. We do not think this material, as there is no pretense that the defendants would not have been fully reimbursed for the land taken had they declined to accept the deposit. It was a voluntary act on their part amounting to a ratification. The difficulty arises from the fact that the money was received under an order of the court without prejudice as above stated. The general rule is that where the court has jurisdiction of the person and the subject-matter, an order made in a special proceeding and affecting a substantial right is binding and in full force until vacated or reversed and can not be collaterally attacked.

This proceeding had wholly ended. It is true the fund was still in the hands of the clerk for the use and benefit of the defendants in error if they so elected; but if the order of court directing its payment had the force and effect claimed by counsel, it was certainly erroneous, if not void. We think, however, it had no such force and effect. It reserved "any further rights which the said defendants may have in the premises and without prejudice to their rights to recover any further sum which may be due." We do not regard it as a right belonging to the defendants to demand interest on a fund deposited for their use and benefit by the city in good faith, within few days after the expiration of the six months, and under an order of the court, nor after they themselves have permitted the fund to remain idle for over two years before electing to receive it.

They were entitled, however, to receive interest on so much of the fund as was allowed as compensation for lots 52, 53 and 57 in which the trench was dug. On February 10, 1898, a tender was made of $144.35 (being the amount of interest due, on the sum so assessed, from August 1, 1893, to the date of the deposit, together with interest on that amount up to the date of the tender). There should be a *remittitur* of the excess over the sum of $144.35, and if not so made the judgment will be reversed.

*E. J. Kinkead* and *H. K. Rogers*, for plaintiff in error.

*C. B. Wilby* and *W. G. Hosea*, for defendants in error.